UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK ex rel. AMERICAN ADVISORY SERVICES LLC,<br><br>*Plaintiff-Relator*,<br><br>v.<br><br>EGON ZEHNDER INTERNATIONAL, INC. and EGON ZEHNDER INTERNATIONAL AG,<br><br>*Defendants*. | Case No.  1:21-cv-06883<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that Defendants Egon Zehnder International, Inc. ("EZ (USA)") and Egon Zehnder International AG ("EZ (AG)") (collectively "Egon Zehnder"), by and through undersigned counsel, hereby remove the above-captioned action—with reservation of all defenses and rights—from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York. This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1441 and 1446. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1340 because this case arises under the United States Internal Revenue Code and related regulations, in particular 26 U.S.C. §§ 861(a)-(b), 26 C.F.R. § 1.861-4. In support hereof, Egon Zehnder shows this Court as follows:

**I.    Introduction and Preliminary Statement**

1.    EZ (USA) is the US operating subsidiary of EZ (AG), a global company that offers executive search and related services in offices around the world. The firm was created in 1964, in part to challenge the headhunting culture that many European companies attributed to the executive search industry. Consultants were not (and are still not) paid by contingency or based on

work brought in—compensation is based primarily on seniority. These key distinctions have made Egon Zehnder the most collaborative search firm in the industry.

2. Both EZ (USA) and EZ (AG) have been served and consent to removal.

3. Plaintiff-Relator American Advisory Services LLC ("Fonseca" or "Plaintiff") is a Wyoming limited liability company created on January 26, 2017, five days before the initial complaint was filed in this matter. **Exhibit A** AAS LLC Articles of Organization. The Plaintiff is an LLC with only one member, a New York resident. *Id.*; Amend. Compl. ¶20. According to documents from the Wyoming Secretary of State, AAS LLC's annual reports from its creation to present have been signed by Martin Fonseca. *See, e.g.*, **Exhibit B** AAS LLC 2018 Annual Report. It is therefore reasonable to infer that Martin Fonseca is the sole member of AAS LLC. Fonseca is a former employee of EZ (USA) who was terminated in 2012 for poor performance. **Exhibit C** Schneider Declaration at ¶3. Fonseca surreptitiously recorded conversations with his colleagues from at least 2008-2011. Amend. Compl. ¶¶ 213, 216, 242, 246, 258, 259. Upon information and belief, Fonseca only filed this action after failing to qualify as an IRS "whistleblower,"[1] and he persists despite the New York Attorney General's decision not to intervene. **Exhibit D** Order Following NYAG Declination. This suit is Fonseca's unwarranted "third bite at the apple."

4. Removal is appropriate in this case because Fonseca's claims are rooted in federal law. Fonseca has merely cloaked them in the guise of state law claims because the federal FCA bars tax claims like this one and because Fonseca's IRS whistleblower claim was unsuccessful. *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016) (affirming federal jurisdiction based on allegations of NYFCA liability where New York statute providing tax exemption explicitly incorporated federal tax law). As in *Jacobson*, the New York corporate

---

[1] The IRS maintains a whistleblower program that offers monetary awards to individuals who provide information that the IRS uses to collect unpaid taxes.

income tax provision at issue here explicitly incorporates federal tax law, and in this case the New York provision is a mere mathematical application of the substantive federal statute.

5. Fonseca, in effect, is asking a court to find that EZ (USA) fraudulently underreported its income for federal tax purposes and that the State of New York was harmed as a result. In order to prevail, Fonseca would need to prove that EZ (USA) violated federal tax law under the Internal Revenue Code ("IRC").

## II. Timeliness of Removal and Jurisdiction

6. Fonseca filed this *qui tam* action in the New York County Supreme Court on January 31, 2017. It is captioned *State of New York ex rel. American Advisory Services LLC v. Egon Zehnder International, Inc.*, Index No. 100115/2017 (the "State Court Action").

7. On November 13, 2020, the State of New York—on whose behalf Fonseca sued—declined to intervene in the State Court Action, pursuant to N.Y. State Fin. Law § 190.2(f) and 13 N.Y.C.R.R. § 400.4. **Exhibit D** Order Following NYAG Declination.

8. Upon the State's notice, the State Court ordered the case to be unsealed for the limited purpose of permitting Fonseca to serve Egon Zehnder with its complaint and to communicate the Court's Orders. Fonseca filed his Amended Complaint on July 12, 2021. Fonseca served the Amended Complaint on EZ (AG) on July 28, 2021 and on EZ (USA) on July 29, 2021. As required by 28 U.S.C. § 1446(a), copies of all the process, pleadings, and orders served upon Egon Zehnder in the Removed Action are attached to this Notice of Removal as **Exhibit E**.

9. This Notice is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days of the date of service of the Complaint on Egon Zehnder.

**III.     This Action Is Removable Because It Necessarily Raises Disputed and Substantial Federal Issues**

10. The Court has subject matter jurisdiction due to its original jurisdiction over cases "arising under" federal law generally, *see* 28 U.S.C. § 1331, and federal tax law in particular, *see* 28 U.S.C. § 1340.

11. Federal courts have "arising under" jurisdiction "over state-law claims that implicate significant federal issues." *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-314 (2005); *Jacobson*, 824 F.3d at 308. Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). These requirements are satisfied here.

12. The present case is indistinguishable from *Jacobson* where the Second Circuit upheld removal of NYFCA claims premised on alleged federal tax violations. In *Jacobson*, a relator alleged that a bank had fraudulently underreported both its federal and New York taxes by claiming exemptions for certain Real Estate Mortgage Investment Conduits ("REMICs"). 824 F.3d at 311. As with the present case, the New York Attorney General declined to intervene. *Id*. at 312. Federal tax law exempted REMICs containing "qualified mortgages" from paying income tax. *Id*. Like the present case, state tax liability derived from federal tax law. Specifically, New York exempted REMICs from paying state income taxes so long as they met the definition "in section 860D of the internal revenue code." *Id*. (*citing* N.Y. Tax Law § 8 (McKinney 2005); N.Y.C. Admin. Code § 11-122 (2012)). The relator in *Jacobson* alleged that the mortgages in the defendant bank's REMICs were not "qualified mortgages" as defined by federal law and therefore the New

York tax exemption was unavailable. *Id*. at 311-312. The Second Circuit upheld removal under the four-part test set by *Gunn* and *Grable*. *Id*. at 317.

### A. This Suit Necessarily Raises Federal Issues

13. "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *Jacobson*, 824 F.3d at 315-17 (finding federal jurisdiction because the plaintiff's complaint "predicated liability" on a question of federal law); *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 102 (2d Cir. 2001) (finding federal jurisdiction because plaintiff's "suit is rooted in violations of federal law" and "the gravamen of [plaintiff's] complaint is that [defendant] . . . failed to perform its statutory duty created under federal law . . . ."); *New York ex rel. Rasmusen v. Citigroup Inc.*, 220 F. Supp. 3d 523, 528 (S.D.N.Y. 2016) (removal test is satisfied where, as here, "whether the defendant violated the New York False Claims Act was entirely derivative of whether it had filed fraudulent federal tax filings.").

14. Fonseca's action requires the resolution of a substantial federal issue. New York income taxes are calculated based on a taxpayer's "net income" as reported in its federal tax returns. N.Y. Tax Law § 208.9 ("The term 'entire net income' means total net income from all sources, which shall be presumably the same as the entire taxable income . . . the taxpayer is required to report to the United States treasury department . . . ."). New York tax law then requires additional adjustments, but this action only alleges errors in the initial "net income" as reported in EZ (USA)'s federal taxes, not in any state law adjustments.

15. The complaint itself confirms that EZ (USA)'s state and local tax obligations depend upon its federal tax obligations. The complaint premises any attempt to calculate EZ

(USA)'s alleged liability under New York tax law as necessarily turning on a determination of the Company's compliance with federal tax law:

> EZI USA receives revenue for the provision of personal services to its clients. Such compensation, where the personal services are performed in the United States, is counted as gross income from sources within the United States and is subject to taxation in the United States. **That compensation counts toward a taxpayer's federal taxable income that is used in calculating the New York taxes.** *See* 26 U.S.C. § 861(a); 26 C.F.R. § 1.861-4; N.Y. Tax Law § 208.9(ii). Similarly, **expenses associated with such income and the ratable part of global expenses can be deducted in calculating federal taxable income and thus the New York taxes.** *See* 26 U.S.C. § 861(b). Amend. Compl. ¶41 (emphasis added).
>
> **EZI USA's liability for the New York taxes was required to be calculated based on its federal taxable income**, which was then reduced using a business allocation percentage representing how much of its United States business was related to or sourced in New York. Accordingly, **the report of its gross receipts or sales and its calculation of EZI USA's federal taxable income on its federal tax forms was material to the calculation of its New York tax liabilities and its obligation to pay the New York taxes**. *Id*. at ¶99 (emphasis added).

16. Congress and the IRS have constructed a carefully calibrated process for companies like EZ (USA) to report their income, including income from cross-border sources. EZ (USA) has complied with that process. An IRS transfer pricing audit focused specifically on the issues that Fonseca has raised, including Fonseca's self-serving departure memo that laid out the very same theories and allegations that Fonseca now trumpets in his Amended Complaint. The IRS accepted the company's returns and ordered no adjustments on these transfer pricing issues.[2]

17. Fonseca's false claims argument relies on EZ (USA)'s filing requirements under the federal IRC. *See, e.g.*, Amend. Compl. ¶¶ 41, 45 (*citing* 26 U.S.C. §§ 61(b), 861(a)). Federal tax law requires companies like EZ (USA) to calculate their taxes based on gross income. This includes "income from sources within the United States" under section 861; "income from sources

---

[2] EZ (USA) agreed to three routine adjustments proposed by the IRS. First, the IRS made adjustments for certain marketing fees that were not reimbursed by EZ (AG). Second, the IRS made adjustments to certain fees charged by an Indian support affiliate. Third, the IRS made adjustments for certain expenses paid by EZ (USA) on behalf of foreign affiliates. In total, these basic adjustments had the effect of lowering EZ (USA)'s expenses for all three years by less than one percent. These issues are distinct from those raised by Fonseca.

without the United States" under section 862; and income from sources that are split between jurisdictions under section 863(b).

18. To correctly apportion income and expenses from cross-border projects (or any source), the IRS requires companies like EZ (USA) to follow transfer pricing rules under section 482 of the IRC as well as corresponding IRS regulations. This section of the IRC directs that related companies dividing revenue and expenses must use "arm's-length" principles to report income accurately. 26 U.S.C. § 482; 26 CFR §§ 1.482-1 *et seq*. The transfer pricing rules were enacted to ensure that U.S. companies do not artificially shift profits to related parties in other tax jurisdictions in order to inappropriately reduce U.S. income tax obligations. Other countries have similar rules to prevent companies from improperly shifting revenue or expenses to the U.S. or to third countries. For decades, the transfer pricing rules have used an arm's-length standard as the touchstone for transactions between corporate affiliates.

19. Over the years, the Treasury Regulations have been expanded to address in detail the application of the arm's-length standard. Those regulations, in a highly reticulated regime, address the application of arm's-length principles in a variety of related party contexts including "loans," "services," "use of tangible property" (leases), sales of property, and use of "intangibles." *See* Treas. Reg. § 1.482-2 through § 1.482-9.

20. The IRS accepted EZ (USA)'s tax returns with respect to the company's transfer pricing practices on cross-border projects. From 2014 through 2016, the IRS audited EZ (USA)'s returns for the years ending October 31, 2011, 2012, and 2013 with an in-depth focus on transfer pricing and the specific issue at the heart of Fonseca's complaint. **Exhibit C** Schneider Declaration at ¶4. At the conclusion of that process, the IRS sought no adjustments to the Company's returns based on the issue at the center of Fonseca's complaint. **Exhibit C** Schneider Declaration at ¶5.

B. **Federal Issues are Actually Disputed**

21.     "The 'actually disputed' factor of the test is satisfied when the federal issue is 'the only' or 'the central' point in dispute." *Jacobson*, 824 F.3d at 316 (*citing Grable*, 545 U.S. at 315 ("the only"); *Gunn*, 568 U.S. at 259 ("the central")).

22.     The federal tax issues on which Plaintiff's complaint is based are "actually disputed" under *Gunn* and *Grable* because EZ (USA) completely rejects Plaintiff's allegations that it underreported its federal taxes. Just the opposite, EZ (USA) fully complied with the IRC and federal transfer pricing rules. Because EZ (USA) complied with federal tax law – as reflected by the IRS's closing of its audit without any adjustments on these issues – it cannot have violated the state law in the manner that Fonseca claims, and no further inquiry is necessary.

C. **Federal Issues are Substantial**

23.     In order to satisfy the *Grable–Gunn* "substantial" federal issue requirement, the legal issue must implicate "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 416 (*citing Grable*, 545 U.S. at 313). Furthermore,

> it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole.

*Gunn*, 568 U.S. at 260 (emphasis omitted). In *Jacobson*, the Second Circuit found that the relator's challenge to the definition of REMICs under federal tax law was substantial because of the central role of REMICs in the "trillion-dollar national market in mortgage-backed securities." 824 F.3d at 318.

24. The federal tax law issues on which this lawsuit is premised are "substantial" under *Gunn* and *Grable* because this lawsuit requires interpreting and applying the federal government's transfer pricing scheme.

25. Transfer pricing is a critical part of the U.S. federal tax regime. The IRS devotes significant resources to it, both in terms of publishing regulatory and other guidance and enforcing transfer pricing rules through tax audits like EZ (USA)'s, as well as tax litigation. For example, the U.S. Tax Court recently upheld more than $10 billion in transfer pricing adjustments for a major U.S. company. *The Coca-Cola Co. v. Commissioner*, 155 T.C. No. 10 (Nov. 18, 2020). The IRS auditors and litigators who pursue transfer pricing enforcement have specialized training and knowledge about transfer pricing rules. It requires a thorough understanding of a taxpayer's business and the exercise of good judgment based on substantial experience. From the IRS's standpoint, it is a key element to a thorough examination of any taxpayer like EZ (USA) that engages in cross-border business with affiliates.

**D. Issues are Capable of Resolution in Federal Court without Disrupting the Federal-State Balance Approved by Congress**

26. The fourth part of the *Grable-Gunn* test requires that the exercise of federal question jurisdiction will not upset "the approved balance of state and federal judicial responsibilities . . . " *Jacobson*, 824 F.3d at 316. To answer this question, courts examine "the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." *Id*. In *Jacobson*, the Second Circuit found no threat to the "federal-state judicial balance" because New York "evinced no interest in enacting any law governing REMICs that deviate[d]" from the IRC and "indicated a lack of interest in [the] case," by declining to intervene. *Id.* at 318. Further, the Second Circuit observed that exercising federal jurisdiction in that case would not

"affect more than a tiny fraction of state false-claims actions, as it is the rare such action that hinges on the proper interpretation of federal tax law." *Id*.

27. Federal jurisdiction over this case will not disrupt the judicial balance between the federal government and the states. In fact, to an even greater degree than the REMIC tax issues litigated in *Jacobson*, federal transfer pricing issues are more appropriately adjudicated in federal court because of their potential impact on revenues reported in foreign countries. Every change in federal transfer pricing has the potential to result in an increase or decrease to the tax revenues allocated to other foreign sovereigns. Such internationally sensitive issues are better addressed in a federal forum than in state court.

28. For this reason, federal courts have frequently adjudicated New York False Claims Act cases. *See, e.g., Jacobson*, 824 F.3d 308; *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538 (S.D.N.Y. 2016).

29. Further, New York has made the deliberate decision to calculate New York corporate income taxes directly based upon federal tax law. N.Y. Tax Law § 208.9(i). The State of New York defers to the federal law on the central legal issue in this case. As in *Jacobson*, "federal jurisdiction here [will not] affect more than a tiny fraction of state false-claims actions . . . ." 824 F.3d at 318. Most New York False Claims Act cases are not tax cases. Of those that are tax cases, those focused on traditional state and local taxes like sales taxes and property taxes will not raise federal issues. Therefore, federal jurisdiction in this case is consistent with the traditional balance between federal and state courts.

## IV. THIS ACTION IS REMOVABLE BECAUSE IT RAISES FEDERAL TAX ISSUES

30. Because the gravamen of Plaintiff's complaint is founded on Egon Zehnder's alleged noncompliance with the IRC, this Court also has original jurisdiction pursuant to 28 U.S.C.

§ 1340 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . .").

## V. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

31. Based on the allegations from the Complaint set forth above, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1340. Accordingly, removal of this action is proper under 28 U.S.C. § 1441.

32. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the county from which the State Court Action is being removed—New York County—lies within this federal district.

33. Promptly after the filing of this Notice of Removal, Egon Zehnder shall give written notice of the removal to Plaintiff and the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

34. By filing this Notice of Removal, Egon Zehnder does not waive any claim, argument, or defense which may be available to it, including objections to venue, nor does Egon Zehnder concede that Plaintiff has pleaded any claim upon which relief may be granted.

## VI. CONCLUSION

WHEREFORE, for the foregoing reasons, this action is hereby removed to the United States District Court for the Southern District of New York. Egon Zehnder respectfully requests that the

Court enter such orders and grant such other and further relief as may be necessary to effectuate removal. Egon Zehnder reserves the right to supplement and/or amend this Notice of Removal.

DATED: August 16, 2021

        Respectfully submitted,

        */s/ Andrew C. Hruska*

        Andrew C. Hruska
        Kyle Sheahen

        KING & SPALDING LLP
        1185 Avenue of the Americas
        New York, New York 10036
        (212) 556-2278

        *Attorneys for Defendants Egon Zehnder International, Inc. and Egon Zehnder International AG*