**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK ex rel. AMERICAN ADVISORY SERVICES LLC, <br><br>       *Plaintiff-Relator*, <br><br>   v. <br><br> EGON ZEHNDER INTERNATIONAL, INC. and EGON ZEHNDER INTERNATIONAL AG, <br><br>       *Defendants*. | Case No.  21-CV-06883-LJL |

## MEMORANDUM OF LAW OF EGON ZEHNDER IN SUPPORT OF ITS MOTION TO DISMISS

Andrew C. Hruska
Kyle P. Sheahen
Jeffrey S. Bucholtz*
Yelena Kotlarsky
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2278

*Attorneys for Defendants Egon Zehnder International, Inc. and Egon Zehnder International AG*

**Pro hac vice application forthcoming*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 5

STATUTORY BACKGROUND .............................................................................................. 8

      a. New York False Claims Act ........................................................................................ 8

      b. New York and Federal Tax Law ................................................................................. 9

ARGUMENT ......................................................................................................................... 10

   I. The Complaint Must be Dismissed Because it Fails to State a Claim Under the NYFCA
     ........................................................................................................................................ 10

      a. The Complaint Fails to Adequately Allege an Obligation ......................................... 12

      b. Fonseca Does Not Properly Allege That Any Statements Were False ....................... 14

      c. The Alleged False Statements Were Not Material to the IRS's Analysis ................. 16

      d. The Complaint Does Not Adequately Allege Scienter ............................................... 18

      e. Fonseca's Own Analysis Contradicts the Complaint's Skewed Damages
        Calculation ............................................................................................................... 20

   II. Fonseca's Earliest Claims are Time Barred Under the Statute of Limitations ............... 23

   III. The Complaint Should Be Dismissed With Prejudice Due To Incurable Defects ......... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................10, 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................................10

*CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC,*
  195 A.D.3d 12 (1st Dep't 2021) ....................................................................................23

*Lilley v. Greene Cent. Sch. Dist.,*
  134 N.Y.S.3d 503 (3d Dep't 2020) .................................................................................24

*Mackensworth v. S.S. Amer. Merchant,*
  28 F.3d 246 (2d Cir. 1994) .............................................................................................24

*Mikes v. Straus,*
  274 F.3d 687 (2d Cir. 2001) .............................................................................................4

*New York ex rel. TZAC, Inc. v. New Israel Fund,*
  No. 1:20-CV-02955-GHW, 2021 WL 603149, 520 F. Supp. 3d 362 (S.D.N.Y.
  Feb. 16, 2021) ..............................................................................................................8, 18

*People ex rel. Hunter v. Starbucks Corp.,*
  74 N.Y.S.3d 717 (Sup. Ct. N.Y. Cnty. 2018) ...............................................................16

*People ex rel. Schneiderman v. Bank of N.Y. Mellon Corp.,*
  40 Misc. 3d 1232(A) (Sup. Ct. N.Y. Cnty. 2013)........................................................2, 9

*Power Auth. of New York ex rel. Solar Liberty Energy Sys., Inc. v. Advanced
  Energy Indus., Inc.,*
  No. 19-CV-1542-LJV, 2020 WL 5995186 (W.D.N.Y. Oct. 9, 2020) ...................................11

*Ruffolo v. Oppenheimer & Co.,*
  987 F.2d 129 (2d Cir. 1993)............................................................................................24

*Sira v. Morton,*
  380 F.3d 57 (2d Cir. 2004)................................................................................................7

*State ex rel. Whiteman v. Aetna Health, Inc.,*
  64 Misc. 3d 818 (Sup. Ct. N.Y. Cnty. 2019) .................................................................15

*State of New York ex rel. John Saric v. GFI Breslin, LLC,*
   No. 101812-2018, 2021 WL 1501613 (Sup. Ct. N.Y. Cnty. Apr. 16, 2021)............................4

*State of New York ex rel. Seiden v. Utica First Ins. Co.,*
   96 A.D.3d 67 (1st Dep't 2012) ....................................................................................8

*Total Asset Recovery Servs. LLC on behalf of State v. Metlife, Inc.,*
   189 A.D.3d 519 (1st Dep't 2020) .........................................................................23, 24

*United States v. Bourseau,*
   531 F.3d 1159 (9th Cir. 2008) ....................................................................................21

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC,*
   878 F.3d 1224 (10th Cir. 2017) ...............................................................................9, 12

*United States ex rel. Colucci v. Beth Israel Med. Ctr.,*
   785 F. Supp. 2d 303 (S.D.N.Y. 2011)..........................................................................15

*United States ex rel. Foreman v. AECOM,*
   454 F. Supp. 3d 254 (S.D.N.Y. 2020)...........................................................................16

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.,*
   842 F.3d 430 (6th Cir. 2016) ......................................................................................20

*United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.,*
   285 F. Supp. 3d 44 (D.D.C. 2017)............................................................................9, 14

*United States ex rel. Miller v. Weston Educ., Inc.,*
   840 F.3d 494 (8th Cir. 2016) ......................................................................................19

*United States ex rel. O'Toole v. Cmty. Living Corp.,*
   No. 17 CIV. 4007 (KPF), 2020 WL 2512099 (S.D.N.Y. May 14, 2020)..............................17

*United States ex rel. Purcell v. MWI Corp.,*
   807 F.3d 281 (D.C. Cir. 2015) ....................................................................................19

*United States ex rel. Sasaki v. New York Univ. Med. Ctr.,*
   No. 05-cv-6163, 2012 WL 220219 (S.D.N.Y. Jan. 25, 2012) .................................................19

*United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.,*
   843 F.3d 1033 (5th Cir. 2016) ....................................................................................12

*United States Steel Corp. v. Comm'r,*
   617 F.2d 942 (2d Cir. 1980)........................................................................................19

*Universal Health Serervs., Inc. v. United States ex rel. Escobar,*
   136 S. Ct. 1989 (2016)..............................................................................................17

**Statutes**

26 U.S.C. § 61 ............................................................................................................................9

26 U.S.C. § 61(a) .......................................................................................................................16

26 U.S.C. § 61(a)(1) ...............................................................................................................9, 16

26 U.S.C. § 61(b) .......................................................................................................................15

26 U.S.C. § 63 ............................................................................................................................9

26 U.S.C. § 482 ....................................................................................................................*passim*

26 U.S.C. § 861 .........................................................................................................................15

26 U.S.C. § 862 .........................................................................................................................15

26 U.S.C. § 863 .........................................................................................................................15

26 U.S.C. § 6211 .......................................................................................................................19

26 U.S.C. § 6212 .......................................................................................................................19

31 U.S.C. § 3729(a)(1)(D) ...........................................................................................................8

31 U.S.C. § 3730(d)(4) ................................................................................................................4

N.Y. State Fin. Law § 188 ..........................................................................................................12

N.Y. State Fin. Law § 189(1)(d) .........................................................................................8, 14, 20

N.Y. State Fin. Law § 189(1)(g) .............................................................................................8, 18

N.Y. State Fin. Law § 189.4(a)(ii) ...............................................................................................22

N.Y. State Fin. Law § 190(6)(d) ....................................................................................................4

N.Y. State Fin. Law § 192.1 ........................................................................................................23

N.Y. Tax Law § 208.9 ............................................................................................................9, 21

**Other Authorities**

26 C.F.R. § 1.482-1 *et seq.* ....................................................................................................9, 16

26 C.F.R. § 1.482-1(a)(2) .....................................................................................................10, 12, 13

26 C.F.R. § 1.482-1(b)(1) ........................................................................................................10, 13

26 C.F.R. § 1.482-1(b)(2)(i) ........................................................................................10

26 C.F.R. § 1.482-1(c)(1)......................................................................................10, 13, 17

26 C.F.R. § 1.482-1(e)(1) ............................................................................................10

26 C.F.R. § 1.482-1(e)(2)(iii)........................................................................................13

26 C.F.R. § 1.482-1(g)(4)(i)..........................................................................................21

26 C.F.R. § 1.482-1(i)(5) .............................................................................................21

26 C.F.R. § 1.482-1(i)(8) .............................................................................................21

Fed. R. Civ. P.  9(b) ....................................................................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 7

## PRELIMINARY STATEMENT

Defendants Egon Zehnder International, Inc. ("EZ USA") and Egon Zehnder International AG ("EZ AG") (collectively, "Egon Zehnder" or "EZ") submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint ("Complaint") for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

Egon Zehnder is a global executive search and leadership advisory firm based in Switzerland that provides services to companies around the world.  The relator is Martin Fonseca, a former EZ USA employee terminated in 2012 for performance reasons.  Fonseca is now hiding behind a Wyoming shell company called American Advisory Services LLC.  *See* Defendants' Notice of Removal ("Not. of Removal") ¶ 3.  He alleges that many years ago, EZ USA reported less income to the IRS than it should have.  Fonseca never alleges that Egon Zehnder had undeclared or "stateless" income—merely that it should have been reported in one country rather than another.  That is, he disagrees with EZ's process for allocating income from certain joint assignments to other countries and with EZ's decisions on where to book shared expenses.  These are "transfer pricing" issues governed by provisions of the Internal Revenue Code ("IRC") and Internal Revenue Service ("IRS") regulations.  Fonseca makes these allegations despite conceding that the IRS—the agency with the relevant tools, expertise, and statutory authority—conducted a detailed, multi-year transfer pricing audit that reviewed the specific issues at the heart of his Complaint and found no relevant violations.

Fonseca has attempted to turn his disagreement with how EZ (and the IRS) handled transfer pricing issues into a bounty-seeking "reverse false claim" action under the New York False Claims Act ("NYFCA").  His theory is that EZ USA's federal tax returns were false because EZ USA did not include sufficient revenue from certain joint assignments in its U.S. income and improperly recorded certain expenses.  Fonseca claims that EZ USA's alleged

federal tax law violations defrauded New York because New York tax liability depends on federal tax liability.

The Court should dismiss this action for multiple reasons. Fonseca's NYFCA claims require him to prove, among other things: (1) an "obligation" to pay more money to New York; (2) a false statement that was (3) material to such obligation; (4) scienter; and (5) damages. He has not adequately pleaded any of those elements.

First, because New York tax law incorporates federal tax law, EZ USA cannot have had an "obligation" to pay more money to New York unless it first had an obligation to pay more money to the United States. The NYFCA defines "obligation" to mean an "established duty" as opposed to a potential or contingent duty. *People ex rel. Schneiderman v. Bank of N.Y. Mellon Corp.*, 40 Misc. 3d 1232(A), *30 (Sup. Ct. N.Y. Cnty. 2013) (citing N.Y. State Fin. Law § 188(4)). But the relevant federal tax law gives the IRS *discretion* regarding whether to require adjustments to cross-border revenue and expense recognition. Moreover, far from finding errors in EZ USA's federal tax returns on this issue, the IRS conspicuously declined to require any relevant adjustments after an extensive audit. As a result, no "obligation" arose as a matter of law. Fonseca avoids citing the relevant federal tax law provisions that govern cross-border revenue recognition. But federal tax law is what it is, and Fonseca cannot change that reality by choosing not to cite the applicable IRC provisions.

Second, and relatedly, EZ did not make a false statement material to an obligation to pay money to New York. Most basically, one cannot make a false statement material to an obligation if there is no such obligation to begin with. But Fonseca's failings do not stop there. His falsity theory fails even on its own terms because he does not identify any federal tax law provision that EZ supposedly violated. EZ USA's reporting of its income on its federal tax

returns was governed by the federal tax rules relevant to that issue; it cannot have been "false" in the abstract, without regard to those applicable rules.  Yet Fonseca cites irrelevant IRC provisions and doggedly refuses to engage with the applicable federal tax rules.  As a result, his contention that EZ made false statements is incoherent.

Third, Fonseca fails to satisfy the NYFCA's "materiality" requirement.  The standard under the transfer pricing rules, which governs arm's-length pricing incorporates a range of values that may be reasonable, as opposed to specifying one and only one specific dollar amount. It is more art than science, subject to varying potentially valid interpretations.  That is especially true in a professional services company.  Because federal law recognizes that transfer pricing issues involve judgment calls, it gives the IRS discretion to require adjustments to cross-border revenue recognition decisions where necessary to achieve reasonableness.  As a result, Fonseca faced an uphill challenge to plead facts showing a materially false statement.  He has failed to do so.

Notwithstanding his disagreements with EZ's revenue recognition decisions, Fonseca acknowledges that the IRS conducted a lengthy audit—during which his allegations of wrongdoing were disclosed to the IRS—but the agency did not impose any relevant adjustments. His claim that EZ's alleged misstatements were material is thus self-refuting and does not remotely clear *Twombly*'s plausibility hurdle.

Fourth, Fonseca fails to plead that EZ acted "knowingly" as required by the NYFCA. For the reasons already stated, EZ did not owe an "obligation" to New York and did not make any materially false statements.  It therefore could not have acted with the necessary scienter. The federal transfer pricing laws are ambiguous, and Fonseca fails to allege scienter because he has not, and cannot, allege that EZ USA's transfer pricing practices were unreasonable.

Furthermore, Fonseca's Complaint concedes that, adopting his own legally erroneous analysis of EZ's federal tax reporting, in some years EZ USA would have *overpaid* its taxes—conduct that is flatly inconsistent with Fonseca's contention that EZ USA was fraudulently "underreporting" revenue.

Fonseca also cannot allege damages, as he misleadingly calculates damages based on only one side of the relevant transactions—*i.e.*, joint assignments billed in foreign countries while omitting joint assignments billed in the U.S. This pleading deficiency is doubly fatal because it leaves the Court without any reasonable basis to conclude that Fonseca has met the NYFCA's $350,000 threshold for tax claims. Beyond that, Fonseca improperly raises claims that clearly fall outside the NYFCA's already quite generous ten-year statute of limitations.

Fonseca's theory revolves around the historic use of "fax charges," which he asserts should have been the sole criterion for revenue recognition on joint assignments between EZ USA and foreign offices. Fonseca also alleges that EZ USA recorded certain expenses that should have been booked by foreign offices. Again, these are clear transfer pricing issues. Fonseca ignores the governing law to the contrary that directs the IRS to use discretion in making a holistic consideration of the taxpayer's overall process.

Fonseca's Complaint suffers from all of these defects despite the fact that he surreptitiously recorded many conversations with multiple colleagues over nearly a decade to try to cash in as a relator. If there were any basis for his suit, he would have been able to state it in his initial complaint. The Court should dismiss the Complaint with prejudice.[1]

---

[1] This case is frivolous, vexatious, and filed primarily for purposes of harassment. Egon Zehnder reserves its rights to seek appropriate relief, including costs and attorney's fees, at a later time. *See, e.g.*, N.Y. State Fin. Law § 190(6)(d); Decision and Order, *State of New York ex rel. John Saric v. GFI Breslin, LLC*, No. 101812-2018, 2021 WL 1501613 (Sup. Ct. N.Y. Cnty. Apr. 16, 2021), NYSCEF Doc. No. 63; *see also* 31 U.S.C. § 3730(d)(4); *Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016).

## STATEMENT OF FACTS

EZ AG is a Swiss limited company headquartered in Zurich that offers executive search and leadership advisory services from offices around the world. Am. Compl. ¶¶ 22, 28. EZ AG operates as if it were a partnership with a single global profit center. Each partner has an equal vote on management and an equal share of the equity regardless of individual or office performance. Am. Compl. ¶ 23.

EZ USA is the American subsidiary of EZ AG headquartered in New York, with offices throughout the United States. Am. Compl. ¶¶ 21, 26. Consistent with Egon Zehnder's one firm philosophy, EZ AG and EZ USA are part of a single organization with offices and employees worldwide. Am. Compl. ¶ 27. Like any multinational company, Egon Zehnder employs a transfer pricing system to allocate revenue and expenses between its many global offices for tax reporting purposes. EZ USA reports and pays taxes in New York, as well as other states. EZ USA's New York State income taxes are calculated based on a formula applied to the income amounts it reports on its federal tax return. Am. Compl. ¶¶ 41, 99.

EZ USA's assignments sometimes combine the efforts of personnel from offices in different countries. In the past, EZ AG and its subsidiaries tracked the efforts of consultants in different offices internally via "fax charges." Am. Compl. ¶¶ 72-73. When working on a joint assignment for which one office handled billing the client, the non-billing office would send a fax charge, registering some shared effort in assisting with the joint assignment. Am. Compl. ¶ 58.

In some circumstances, a fax charge would later be followed by an "I/A," or "international assistance" billing—an invoice for payment to the EZ billing office on the joint assignment. That invoice would be followed by a transfer of funds from the billing office to the non-billing office. Am. Compl. ¶ 113. In other circumstances, fax charges sent by the non-

billing office would not be followed by an I/A, and the entire revenue from that assignment would be recognized either by EZ USA or by the foreign affiliate.  Am. Compl. ¶ 258.  When a non-billing office sent an I/A, this resulted in the exchange of payment between EZ offices and that payment was used to recognize revenue for tax reporting purposes.  Am. Compl. ¶ 116.

Fonseca admits that these transactions went both ways—that EZ USA's reported income both increased and decreased through this method.  Am. Compl. ¶ 246 ("SCHNEIDER: But isn't that true in the other direction as well?  [FONSECA]: Yeah…"); ¶ 258 ("SCHNEIDER: But does it only go one direction?  Is it ever true that maybe it goes the other way… [FONSECA]: It sometimes goes the other way…").

Fonseca's also alleges that EZ USA recognized a narrow category of expenses, the so-called "Schedule C" expenses, when the expenses should have instead been shared between EZ USA and EZ's foreign offices.  Am. Compl. ¶¶ 151-91.  So narrow, in fact, that Fonseca's allegations are limited to a single type of cost spreadsheet maintained by EZ USA, and, more specifically, to a single tab within that spreadsheet.  Am. Compl. ¶¶ 161-64.  Some of these expenses were associated with an executive that worked in New York City.  Am. Compl. ¶¶ 170-71.

In 2014, the IRS informed EZ USA that it was conducting an audit and sought, among other things, information regarding Egon Zehnder's "revenue and expense recognition on a worldwide basis."  Am. Compl. ¶¶ 286-87.  Fonseca concedes that the audit examined EZ USA's transfer pricing practices, both revenue and expenses, and the IRS was aware of the company's practice of using fax charges.  For example, Fonseca incorporates by reference in the Complaint four separate times a September 29, 2014 letter that EZ USA's counsel William Sharp sent to the IRS containing a heading titled "Fax Charges and International Invoices."  Kotlarsky Decl. Exh.

6

1[2]; Am. Compl. ¶¶ 305-307, 310.  The letter described fax charges as a "management-reporting tool to reflect that one or more consultants in a particular office performed services in connection with a given matter to assist another office involved in the search matter."  Kotlarsky Decl. Exh. 1 at 12.  The letter described I/As as the "method through which fax charges are invoiced for payment" resulting in "the formal exchange of cash between offices."  *Id.* at 13.  EZ USA clearly explained to the IRS in that letter that it never intended fax charges to serve as the sole criterion of the value that an office contributed to an assignment.  "EZ partners are indifferent as to which operational entity should earn profits, because all EZ partners are compensated by reference to a worldwide, consolidated P&L statement. . . . This indifference as to where profits are allocated is a principal reason why fax charges have not always been 'converted' into international invoices."  *Id.* at 14.

Fonseca also incorporates by reference a November 12, 2014 letter from Sharp to the IRS that Fonseca asserts is "false."  Am. Compl. ¶ 319.  In that letter, Sharp attached a copy of the EZ AG finance manual containing "an accounting and managerial summary of the 'fax charge' procedure," Kotlarsky Decl. Exh. 2; *see also* Am. Compl. ¶¶ 319-20.  That letter attached a November 26, 2012 email from Fonseca himself that discusses the very issue at the heart of his allegations.  Kotlarsky Decl. Exh. 2 at 175 ("We must either: Match 100% of fax charges with I/A invoices, or . . . Eliminate fax charges altogether and just issue I/A invoices.  The Firm continues to have a legal P&L (includes the I/A invoices) and a Performance P&L (includes fax charges).").

---

[2] In assessing the sufficiency of a complaint under Rule 12(b)(6), in addition to the complaint, the Court may consider a "written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted).  Here, Fonseca incorporates the September 29, 2014 letter by reference into the Complaint because he cites to it four separate times, and the letter is integral to the Complaint for the same reason.

Ultimately, the IRS closed its multi-year audit with full awareness of the allegations Fonseca has made yet again in his Complaint and required no adjustments to EZ USA's tax returns based on these issues—that is, transfer pricing for joint assignments or transfer pricing for certain "Schedule C" expenses.  Am. Compl. ¶¶ 161, 321.

## **STATUTORY BACKGROUND**

### a. **NEW YORK FALSE CLAIMS ACT**

Fonseca raises claims under sub-parts (d) and (g) of the NYFCA, known as conversion claims and reverse false claims, respectively.[3]  To prove a violation under the conversion provision, a plaintiff must show the defendant "has possession, custody, or control of property or money used, or to be used, by the state or a local government and knowingly delivers, or causes to be delivered, less than all of that money or property."  N.Y. State Fin. Law § 189(1)(d).  The NYFCA provision for conversion claims mirrors the language in the federal False Claims Act ("FCA") for conversion claims.  31 U.S.C. § 3729(a)(1)(D).[4]

Fonseca's second purported basis, the reverse false claim provision, prohibits knowingly making or using "a false record or statement material to an obligation to pay or transmit money or property to the state or a local government."  N.Y. State Fin. Law § 189(1)(g).

"The NYFCA defines 'knowing and knowingly' to mean that the person '(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.' . . . [A]cts occurring by mistake or as a result of mere negligence are not covered by this article."  *New York ex rel. TZAC, Inc. v. New Israel Fund*, No. 1:20-CV-02955-GHW, 2021 WL

---

[3] N.Y. State Fin. Law §§ 189(1)(d), 189(1)(g).

[4] *State of New York ex rel. Seiden v. Utica First Ins. Co*., 96 A.D.3d 67, 71 (1st Dep't 2012) ("The NYFCA follows the federal False Claims Act . . . and therefore it is appropriate to look toward federal law when interpreting the New York act[.]").

603149, at *19, 520 F. Supp. 3d 362 (S.D.N.Y. Feb. 16, 2021) (citing N.Y. State Fin. Law §

188(3)) (internal citations omitted).  The NYFCA defines "obligation" as an "established duty,

whether or not fixed, arising from an express or implied […] relationship, from a fee-based or

similar relationship, from statute or regulation, or from the retention of any overpayment."

*People ex rel. Schneiderman*, 40 Misc. 3d at *30 (citing N.Y. State Fin. Law § 188(4)).  The

statutory requirement that such a duty be "established" means that potential or contingent

obligations do not qualify. *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d

1224, 1231 (10th Cir. 2017).  Similarly, for conversion claims, "[p]roperty or money used, or to

be used, by the Government" cannot be contingent but must belong to the Government at the

time of the violation.  *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp*., 285 F.

Supp. 3d 44, 55 (D.D.C. 2017), *aff'd*, 929 F.3d 721 (D.C. Cir. 2019).

b. NEW YORK AND FEDERAL TAX LAW

Under New York tax law, businesses like EZ USA are required to calculate "net income,"

which is a function of "taxable income" calculated under the IRC.  N.Y. Tax Law § 208.9 ("The

term 'entire net income' means total net income from all sources, which shall be presumably the

same as the entire taxable income . . . the taxpayer is required to report to the United States

treasury department . . . .").  Under the IRC, "taxable income" is a function of gross income

"from whatever source derived" minus allocable deductions.  26 U.S.C. §§ 61, 63.  For

businesses like EZ USA that provide services to clients, gross income is primarily based on

"compensation for services, including fees, commissions, fringe benefits, and similar items."  26

U.S.C. § 61(a)(1).  The IRC's federal transfer pricing rules further require that when U.S.

taxpayers have transactions with foreign affiliates, the U.S. taxpayer must pay them for services,

and be paid by them for services, respective amounts consistent with the federal transfer pricing

statute and related regulations.  26 U.S.C. § 482; 26 C.F.R. § 1.482-1 *et seq*.

Those federal transfer pricing regulations require taxpayers to apply an "arm's-length" standard to ensure transactions with affiliates and other related parties are priced within an acceptable range, 26 C.F.R. § 1.482-1(b)(1), but the arm's-length standard does not compel the use of any single pricing method.  26 C.F.R. § 1.482-1(b)(2)(i), (c)(1).  The regulations themselves provide that "application of a method may produce a number of results from which a range of reliable results may be derived.  A taxpayer will not be subject to adjustment if its results fall within such range (arm's length range)."  26 C.F.R. § 1.482-1(e)(1).  Section 482 and its regulations thus invest significant discretion in the IRS to interpret the transfer pricing rules and make any necessary adjustments to a taxpayer's taxes,[5] far beyond the application of most other tax provisions, in light of its experience and judgment.  The application of these rules is not a mathematical equation—indeed, a range of interpretations of the transfer pricing rules may satisfy the IRS, particularly when it is clear that the taxpayer is paying tax on all of its income somewhere.

## ARGUMENT

### I.  THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UNDER THE NYFCA.

To survive a motion to dismiss, Fonseca must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

---

[5] "[T]he Secretary [of the Treasury] *may* distribute, apportion, or allocate gross income . . . if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income. . . ."  26 U.S.C. § 482 (emphasis added).  The corresponding regulations also clearly indicate the IRS's discretion to adjust a taxpayer's taxes.  *See, e.g.*, 26 C.F.R. § 1.482-1(a)(2) ("The district director *may* make allocations between or among the members of a controlled group if a controlled taxpayer has not reported its true taxable income.") (emphasis added).

at 555).  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  "A plaintiff alleging false claims under the [NYFCA] must plead with particularity the circumstances constituting fraud in accordance with Federal Rule of Civil Procedure 9(b)."  *Power Auth. of New York ex rel. Solar Liberty Energy Sys., Inc. v. Advanced Energy Indus., Inc.*, No. 19-CV-1542-LJV, 2020 WL 5995186, at *8 (W.D.N.Y. Oct. 9, 2020).

Fonseca's Complaint fails to state a NYFCA claim.  Because Fonseca fails to allege that EZ USA had an "obligation" to pay more money to the United States, he also fails to allege any obligation to pay more money to New York.  Relatedly, Fonseca has not alleged falsity because one cannot make a false statement material to an obligation if no such obligation existed in the first place.  Fonseca's falsity theory further fails because he does not identify any relevant federal tax law provision that EZ USA supposedly violated when submitting its federal tax returns.

Fonseca also has not satisfied the materiality requirement because federal law recognizes the judgment involved in transfer pricing issues and gives the IRS discretion to require adjustments to cross-border revenue recognition decisions where necessary.  Indeed, Fonseca acknowledges that the IRS itself conducted a lengthy audit of these issues, with knowledge of fax charges, and did not impose any related adjustment.  The IRS could not possibly have viewed EZ's alleged misstatements as material.

Fonseca also fails to plead scienter.  Given the imprecision and ambiguity of the applicable federal tax rules, the existence of any alleged obligation and the materiality or falsity of any alleged statement was, at the very least, unclear.  Moreover, in Fonseca's own flawed analysis of EZ USA's federal tax reporting, he goes so far as to concede that EZ USA would have *overpaid* its taxes in some years.  Plaintiff's Mem. of Law in Supp. of Mot. to Remand

("Mot. to Remand") at 16 (citing Am. Compl. ¶¶ 321-24).  That claim is inherently inconsistent with the notion that EZ USA defrauded the IRS and thereby also defrauded New York.  Finally, Fonseca's Complaint fails to allege damages because, even again adopting his flawed view of tax reporting, it does not account for the offsetting of joint assignments billed entirely in the United States against projects billed by EZ USA's foreign affiliates, and it consequently fails to meet the $350,000 annual statutory threshold for NYFCA claims.

### a.  THE COMPLAINT FAILS TO ADEQUATELY ALLEGE AN OBLIGATION

Fonseca fails to adequately allege that EZ USA had an "obligation" to pay New York State more than what it had already paid because the NYFCA excludes potential future liabilities, and the relevant federal transfer pricing statute and regulations vest complete discretion with the IRS.  The NYFCA defines "obligation" as "an established duty, whether or not fixed, arising . . . from statute or regulation . . . ."  N.Y. State Fin. Law § 188.  Contingent, future, or potential obligations thus do not implicate the NYFCA.  *United States ex rel. Barrick*, 878 F.3d at 1231 (obligations cannot be "dependent on a future discretionary act").

Since the federal transfer pricing statute vests complete discretion with the IRS, it cannot serve as the basis for a present obligation under the NYFCA's reverse false claims provision. *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co*., 843 F.3d 1033, 1039-41 (5th Cir. 2016) (Toxic Substances Control Act did not impose an FCA obligation because the duty to pay depended on Administrator's discretion).  The federal transfer pricing statute provides that for affiliated entities, including EZ's global offices, the Secretary of the Treasury[6] "*may distribute, apportion, or allocate* gross income . . . between or among such organizations . . . *if he determines* that such distribution, apportionment, or allocation is necessary in order to prevent

---

[6] The Secretary of the Treasury has delegated this authority to the Commissioner of the IRS. 26 C.F.R. § 1.482-1(a)(2).

evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."  26 U.S.C. § 482 (emphasis added); *see also* 26 C.F.R. § 1.482-1(a)(2) ("The district director *may make allocations* between or among the members of a controlled group *if* a controlled taxpayer has not reported its true taxable income. *In such case*, the district director *may allocate* income, deductions, credits, allowances, basis, or any other item or element affecting taxable income (referred to as allocations).") (emphasis added).

The IRS's regulations underscore the discretionary and subjective nature of the federal transfer pricing regime.  The rules direct application of an arm's-length standard, but also state that there is no single proper methodology for determining arm's-length pricing.  26 C.F.R. §§ 1.482-1(b)(1), (c)(1).  "The arm's length result of a controlled transaction must be determined under the method that, under the facts and circumstances, provides the most reliable measure of an arm's length result. Thus, there is no strict priority of methods, and no method will invariably be considered to be more reliable than others."  26 C.F.R. § 1.482-1(c)(1).

To allege an obligation, Fonseca would be required to identify an established transfer pricing liability.  But far from showing that the IRS imposed such an obligation, he concedes that the IRS exercised its discretion under Section 482 in the form of a transfer pricing audit and made no adjustments related to the conduct alleged, either relating to revenue from joint assignments or "Schedule C" expenses.  Mot. to Remand at 16 (citing Am. Compl. ¶¶ 321-24). The Complaint's contradictions are impossible to reconcile.  Further, the federal transfer pricing laws permit the IRS to determine a range of acceptable amounts of income that EZ USA should have reported and order any necessary adjustments if EZ USA fell below that range.[7]  After its

---

[7] The Treasury Regulations provide that even where reliable data from uncontrolled transactions is lacking, if the taxpayer's profit or profit margin falls within the interquartile range experienced by unrelated taxpayers in a similar business, no transfer pricing adjustment is necessary.  The interquartile range is data falling within the 25th to 75th percentile of the results derived by unrelated taxpayers in a similar business. 26 C.F.R. § 1.482-1(e)(2)(iii).

extensive audit that included receiving information specifically about fax changes and I/As, the IRS exercised its discretion to make *no adjustments* related to the conduct that Fonseca alleges. Am. Compl. ¶ 321.[8]  Because EZ USA's liability to repay any taxes and interest could arise *only after* the IRS exercised its discretion to impose an adjustment—which it did here and made no relevant adjustments—Fonseca has therefore failed to allege that EZ USA had any obligation under the NYFCA and his reverse false claims allegations must be dismissed.

Fonseca's conversion claim must be dismissed for the same reason.  N.Y. State Fin. Law § 189(1)(d).  Courts use a similar definition to determine the existence of an "obligation" for reverse false claims and "money to be used by the government" for conversion claims.  *United States ex rel. Kasowitz Benson Torres LLP*, 929 F.3d at 728.  Because the IRS did not require any relevant adjustment, EZ USA did not owe an obligation to pay additional money to the United States (or, in turn, to New York) and that additional money did not "belong to" the United States or New York as required for a conversion claim.  *Id*.  Therefore, Fonseca's conversion claim must be dismissed, as well.

**b.  Fonseca Does Not Properly Allege That Any Statements Were False**

Fonseca never identifies any tax statute, rule, or regulation that would render EZ USA's tax returns false.  He essentially concludes that the mere existence of fax charges—internal metrics that roughly tracked the performance of consultants—makes the revenue numbers reported false.  That incorrect assumption is the flawed essence of Fonseca's complaint.  *See, e.g.,* Am. Compl. ¶¶ 72-98.  Nowhere does Fonseca identify a violation of any specific tax statutes or regulations to support his conclusion that EZ USA should have reported and paid

---

[8] Fonseca alleges that "the IRS concluded its audit by…assessing EZI USA for underpaying taxes on improperly deducted expenses with respect to its operating expense fax charges…"  Am. Compl. ¶ 321.  This issue is distinct from transfer pricing for joint assignments or "Schedule C" expenses.  However, to the extent there is any overlap, such claims are barred by the resolution of the IRS audit.

more in federal and New York State taxes.  Instead, Fonseca carefully avoids citing 26 U.S.C. §

482 and even argues (bizarrely) that the application of those rules is not in dispute.  This is

despite the fact that the dispute at its core deals squarely with the issue Section 482 governs:

allocation of revenue from joint assignments.  Mot. to Remand at 10-11.  *See State ex rel.*

*Whiteman v. Aetna Health, Inc.*, 64 Misc. 3d 818, 825 (Sup. Ct. N.Y. Cnty. 2019) (granting

defendant's motion to dismiss because, while making general allegations that the defendant's

conduct was "fraudulent" or "unlawful," the complaint failed to specify any statute, regulation,

or law that the defendant violated); *see also United States ex rel. Colucci v. Beth Israel Med.*

*Ctr.*, 785 F. Supp. 2d 303, 314 (S.D.N.Y. 2011), *aff'd sub nom. Colucci v. Beth Israel Med. Ctr.*,

531 F. App'x 118 (2d Cir. 2013) (granting defendant's motion to dismiss based on, among other

things, failure to plead falsity because while the relator repeatedly stated that the defendant's

actions "violate 'Medicare ... statutes and regulations,' she fails to identify any such

regulations.").

   The federal income tax provisions that Fonseca does cite do not impose any "obligation"

on EZ USA.  Fonseca points to 26 U.S.C. Section 61(b), as well as Section 861(a), (b) and its

associated regulations.  Fonseca's reliance on Section 61(b) is puzzling and misplaced.  Section

61(b) is not a substantive provision.  Rather, it merely provides a broad cross-reference to Parts

II and III of the IRC related to items of gross income and exclusions from gross income.  Section

861, as well as related Sections 862 and 863, direct companies to classify reportable income as

U.S.-sourced (§ 861), foreign-sourced (§ 862), or mix-sourced (§ 863).  These classifications

concern the narrow issue of claiming credits for foreign tax payments.  The statutes do not apply

until the point in the calculation at which the taxpayer *has already reported* income.  They do not

relate to the decision to recognize income, nor do they specify the method for apportioning income among related companies.

The relevant provisions controlling EZ USA's income reporting requirements are 26 U.S.C. §§ 61(a) and 482, but Fonseca cites neither.  Section 61(a) provides that "gross income" includes "compensation for services, including fees, commissions, fringe benefits, and similar items."  26 U.S.C. § 61(a)(1).  For businesses like EZ USA that provide services to clients, compensation for services is the primary contributor to gross income.  Fonseca does not allege that EZ USA failed to comply with 26 U.S.C. § 61(a).

The true source of EZ USA's obligation to apportion income from joint assignments involving different offices and expenses shared by different offices is 26 U.S.C. § 482.  As described above, Section 482 provides the IRS with discretion to adjust taxpayers' returns to ensure that when taxpayers have transactions with foreign affiliates, the taxpayer pays them for services, and is paid by them for services, amounts consistent with the federal transfer pricing statute and related regulations.  26 U.S.C. § 482; 26 C.F.R. 1.482-1 *et seq*.  Fonseca does not mention Section 482 or the IRS's regulations implementing that provision, 26 C.F.R. § 1.482-1 *et seq.*, in his Complaint, let alone set forth a plausible claim that EZ USA was required to use fax charge numbers or "Schedule C" expenses for transfer pricing purposes to avoid violating those rules.

### c.  THE ALLEGED FALSE STATEMENTS WERE NOT MATERIAL TO THE IRS'S ANALYSIS

A false claim or statement "must be material to the Government's payment decision in order to be actionable under the False Claims Act."  *United States ex rel. Foreman v. AECOM*, 454 F. Supp. 3d 254, 264 (S.D.N.Y. 2020); *People ex rel. Hunter v. Starbucks Corp.*, 74 N.Y.S.3d 717, 723 (Sup. Ct. N.Y. Cnty. 2018) ("[T]he false statement or record 'must be material to the other party's course of action.'") (citation omitted).

16

Under the governing transfer pricing statute and regulations, a taxpayer's returns can incorporate a range of reasonable values, and the IRS has ultimate discretion to require adjustments where necessary to achieve reasonableness.  The Supreme Court has recognized that "[t]he materiality standard is demanding," and materiality cannot be found where "noncompliance is minor or insubstantial."  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016).  As described above, the arm's-length transfer pricing standard requires taxpayers to adopt a reasonable approach.  Under the regulations, "there is no strict priority of methods, and no method will invariably be considered to be more reliable than others."  26 C.F.R. § 1.482-1(c)(1).  Federal tax law recognizes that transfer pricing issues involve judgment calls on the part of the taxpayer, and further that the IRS has the ultimate discretion to make adjustments.  For this reason, Fonseca's allegations do not plead facts sufficient to demonstrate that EZ's tax returns were materially false.

Further, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."  *United States ex rel. O'Toole v. Cmty. Living Corp.*, No. 17 CIV. 4007 (KPF), 2020 WL 2512099, at *11 (S.D.N.Y. May 14, 2020) (citing *Escobar*, 136 S. Ct. at 2003) (where the plaintiff brought claims under the FCA and the NYFCA, holding that the complaint failed to meet the materiality standard under both because the complaint did nothing more than note regulations and allege behavior that violated those regulations without indicating how the United States or New York would have considered the violations fundamental to reimbursement).

Notwithstanding his disagreements with EZ's revenue and expense recognition decisions, Fonseca acknowledges that the IRS reviewed EZ's global transfer pricing practices—Am. Compl. ¶ 313 ("EZI USA's practices had been revealed to a tax agency"); Am. Compl. ¶ 319

17

("EZI USA finally shared the Finance Manual with the IRS") —and the IRS knew about the use of fax charges (Am. Compl. ¶ 305) and shared expenses (Am. Compl. ¶ 321).  EZ USA explained the fax charges to the IRS and provided additional information to supplement that explanation through several letters that Fonseca references in the complaint.  Am. Compl. ¶ 305. In the course of its voluminous production of documents and information to the IRS, EZ USA produced the EZ AG finance manual containing an accounting and managerial summary of the fax charge procedure, as well as correspondence from Fonseca himself detailing his allegations of wrongdoing.  Am. Compl. ¶¶ 305, 319; Kotlarsky Decl. Exh. 1.  This history, which Fonseca describes and references throughout his complaint, demonstrates that the IRS was not deceived in any way about these issues and that the IRS did not view any alleged false statements as material.

### d.  The Complaint Does Not Adequately Allege Scienter

Fonseca cannot allege that EZ USA acted with the requisite scienter.  The NYFCA prohibits knowingly making or using a false record material to an obligation to pay the government.  N.Y. State Fin. Law § 189(1)(g).  "Knowing" refers to actual knowledge, deliberate ignorance of the truth or falsity of the information, or reckless disregard of the truth or falsity of the information.  "[A]cts occurring by mistake or as a result of mere negligence are not covered by this article."  *New York ex rel. TZAC, Inc. v. New Israel Fund*, 2021 WL 603149 at *19, 520 F. Supp. 3d 362 (citing N.Y. State Fin. Law § 188(3)) (internal citations omitted).

For the reasons stated above, EZ USA did not owe an "obligation" to New York and did not make any materially false statements.  Fonseca has failed to assert any legal obligation that would render EZ USA's tax returns materially false.  As a consequence, EZ USA could not have had any fraudulent intent regarding a non-existent obligation or non-existent false statement.

Even a reasonable mistake does not equal scienter.  When a company acts based on "reasonable but erroneous interpretations of [its] legal obligations," it cannot be liable for false claims.  *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015); *see also United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 500 (8th Cir. 2016) ("A defendant's 'reasonable interpretation of any ambiguity inherent in the regulations belies the scienter necessary to establish a claim of fraud.'").  Taxpayers adopt differing methodologies when calculating their tax obligations, and even a mistake that leads to an adjustment does not signal that a taxpayer had fraudulent intent.  This is particularly true of complex international transfer pricing determinations.  *See United States Steel Corp. v. Comm'r*, 617 F.2d 942, 950 (2d Cir. 1980) (acknowledging that "to use [26 U.S.C. § 482] to require a taxpayer to achieve greater fidelity to abstract notions of a perfect market than is possible for actual non-affiliated buyers and sellers to achieve would be unfair.").  The FCA and NYFCA are aimed at preventing *fraud* and are not intended to punish well-meaning businesses that have a good-faith disagreement with the government or make an honest mistake.  *United States ex rel. Sasaki v. New York Univ. Med. Ctr.*, No. 05-cv-6163, 2012 WL 220219, at *7 (S.D.N.Y. Jan. 25, 2012), *aff'd sub nom. ABC v. New York Univ. Hospitals Ctr.*, 629 F. App'x 46 (2d Cir. 2015) ("Put another way, 'knowingly' presenting a false claim 'does not mean the claim is incorrect as a matter of proper accounting, but rather means it is a lie.'").

Here, far from finding a mistake in EZ USA's allocation of revenue from joint assignments, the IRS found no related adjustments necessary.  The IRS can make adjustments during an audit without showing that inaccuracies were the result of intentional misconduct.  26 U.S.C. § 6212 (stating that if the IRS determines that there is a deficiency in tax, it is authorized to send notice of such deficiency to the taxpayer); 26 U.S.C. § 6211 (defining "deficiency" as the

19

difference between the tax imposed by the Code and the amount of tax reflected by the taxpayer on its return, without any regard to taxpayer intent).  As a result, even if the IRS had required a relevant adjustment, that would not suggest that EZ USA had any fraudulent intent.  But, where the IRS did not make any adjustments to revenue from joint assignments or "Schedule C" expenses after conducting a lengthy audit, Fonseca's allegations of scienter are not plausible.

Fonseca's own assertion both in his Complaint and in his Motion to Remand that EZ USA reported *more* revenue than it should have in certain years also undermines any inference of scienter.  Am. Compl. ¶¶ 321-24; Mot. to Remand at 16 ("[E]ZI USA had certain over-reported revenues that offset the under-reported revenues, causing EZI USA to overpay taxes for those three years combined.").  That concession by Fonseca suggests a company grappling with the complexity and judgment-laden nature of transfer pricing determinations—not a company out to defraud the IRS or New York.

Fonseca's conversion claims must be dismissed for lack of scienter, as well.  N.Y. State Fin. Law § 189(1)(d) (defendant must "knowingly" deliver less than all of state's money).  This requires proof that a defendant knew the money belonged to the government.  *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 439 (6th Cir. 2016).  Therefore, for the same reasons that Fonseca has failed to allege that EZ knew it had an obligation, he has also failed to allege that EZ knew any money belonged to the government.

### e. FONSECA'S OWN ANALYSIS CONTRADICTS THE COMPLAINT'S SKEWED DAMAGES CALCULATION

Even adopting Fonseca's flawed analysis of EZ USA's federal tax reporting, his damages claims assert a deficiency on one side of the ledger and fail to offset the surplus on the other. Fonseca alleges that income from joint assignments billed in foreign offices should have been included in EZ USA's gross income if part of the work took place in the U.S.  Am. Compl. ¶¶

20

53, 94.  But he conveniently ignores the inverse.  He acknowledges that joint assignments billed in the U.S. for which part of the work took place in foreign offices offset joint assignments billed outside the U.S., *see, e.g.*, Am. Compl. ¶ 216, but arbitrarily excludes them from his damages calculation.  "Heads I win, tails you lose" is not the way the federal tax system, nor the NYFCA, work.  Because Fonseca's damages calculations are legally erroneous, he has failed to plead damages.

Reverse false claims damages are calculated as "the difference between what the defendant should have paid the government and what the defendant actually paid the government."  *United States v. Bourseau*, 531 F.3d 1159, 1172 (9th Cir. 2008) (calculating damages as the difference of the amount owed to Medicare program and the amount previously paid to Medicare program).  By ignoring the offsetting amounts, Fonseca has not properly alleged that EZ USA reported a lower "net income" to New York State than it should have.  N.Y. Tax Law § 208.9.  IRC regulations require the IRS to make certain decreasing adjustments in calculating the arm's-length standard for related party transactions.  26 C.F.R. § 1.482-1(g)(4)(i).  Thus, the IRS must take into account the effect of transactions between "controlled"[9] taxpayers that would result in a setoff against the IRS's proposed adjustments.

In his own surreptitious recordings of EZ executives, Fonseca himself acknowledges that there were joint assignments billed entirely in the U.S. and admits that the income allocation goes both ways.  Am. Compl. ¶ 216 ("REINKEN: [...] The risk...is the same in every geography, too.  It's just a U.S. risk.  [FONSECA]: Right.  Well, some go the other way...");

---

[9] A "controlled taxpayer" for such purposes is "any one of two *or more* taxpayers owned or controlled directly or indirectly by the same interests.  26 C.F.R. § 1.482-1(i)(5) (emphasis added).  The concept of controlled taxpayer is broad and includes EZ and its affiliates.  Further, a controlled transaction or controlled transfer means "any transaction or transfer between two *or more* members of the same group of controlled taxpayers."  26 C.F.R. § 1.482-1(i)(8) (emphasis added).  Thus, the shared engagements conducted by EZ and its affiliates are controlled transactions.

¶ 246 ("SCHNEIDER: But isn't that true in the other direction as well?  [FONSECA]: Yeah…");
¶ 258 ("SCHNEIDER: But does it only go one direction?  Is it ever true that maybe it goes the other way… [FONSECA]: It sometimes goes the other way…").  Even in theory, New York could only have suffered damages if income from joint assignments billed outside the U.S. exceeded income from joint assignments already billed and reported in the U.S.  Because Fonseca's damages allegations fail to account for this, they are legally insufficient.  Am. Compl. ¶¶ 4, 94, and 144.

Fonseca even admits that EZ USA described these offsets directly to the IRS during its transfer pricing audit.  And he further admits that this was a key factor in the IRS's decision not to make any transfer pricing adjustments in connection with EZ USA's accounting for joint assignments.  Mot. to Remand at 16 ("[T]he IRS did not assess EZI USA for the revenue issue in those three open tax years because Defendants argued that in those years EZI USA had certain over-reported revenues that offset the under-reported revenues, causing EZI USA to overpay taxes for those three years combined.") (citing Am. Compl. ¶¶ 321-24).  This is a bald admission that Fonseca cannot plead damages for the years covered by the audit, 2011-2013, and that his theory is both inconsistent with IRS practice and an improper basis for a NYFCA claim.

Moreover, Fonseca's failure to properly allege damages means he cannot satisfy New York's $350,000 claim threshold.  N.Y. State Fin. Law § 189.4(a)(ii).  New York State Finance Law Section 189.4 applies to claims "under the tax law only if (i) the net income or sales of the person against whom the action is brought equals or exceeds one million dollars for any taxable year subject to any action brought pursuant to this article; [and] (ii) the damages pleaded in such action exceed three hundred and fifty thousand dollars."  *Id*.

The "any taxable year" qualification of part (i) coupled with the "such action" definition in part (ii) necessitates the conclusion that the legislature intended the $350,000 threshold to apply to each taxable year.  Part (ii) could have referred to "in this action," or "any action," —as indeed, part (i) does—but instead the legislature consciously chose to refer back to the annual limitation in part (i), importing the yearly threshold analysis.  In addition to ignoring the offsetting amounts that would be required even under his flawed theory of the case, Fonseca fails to allege damages specific to each tax return filed by EZ USA for the years ending October 31, 2006 through 2013.  Am. Compl. ¶¶ 207, 210, 236, 237, 254, 264, 278, 296.  Because Fonseca fails to allege a single claim over the $350,000 threshold, the Complaint must be dismissed.

## II.   FONSECA'S EARLIEST CLAIMS ARE TIME BARRED UNDER THE STATUTE OF LIMITATIONS

Claims that fall outside the NYFCA's ten-year statute of limitations must be dismissed. N.Y. State Fin. Law § 192.1.  Fonseca's allegations relating to purported false claims that defendants filed more than 10 years before the commencement of the action are barred.  *Total Asset Recovery Servs. LLC on behalf of State v. Metlife, Inc.*, 189 A.D.3d 519, 523 (1st Dep't 2020).  The 10-year period starts from the making, using, or causing to be made or used a false record or statement.  *Id.* at 524.  A claim accrues for statute of limitations purposes when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief.  *CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*, 195 A.D.3d 12, 18 (1st Dep't 2021) (internal citations omitted).

Fonseca's claims concerning EZ USA's fiscal years ending October 31, 2004 and 2005 are outside the statute of limitations and must be dismissed.  EZ USA generally filed its taxes in the month of July following the end of its fiscal year on October 31.  *See, e.g.*, Am. Compl. ¶¶ 207, 210.  However, Fonseca did not file his initial complaint until January 31, 2017 and claims

from before January 31, 2007 are therefore barred by the ten-year statute of limitations. Fonseca's allegation regarding amended tax returns, Am. Compl. ¶ 238, does not extend the statute of limitations because the facts relevant to the allegedly false claims are the same in both filings. *Total Asset Recovery Servs.*, 189 A.D.3d at 524 (finding where defendants allegedly filed false certifications with the state over prolonged period of time, it was "still the initial allegedly false report that starts the clock on NYFCA's statute of limitations.").

Further, the initial complaint does not contain allegations against EZ AG, which was first named as a defendant in this case in the Complaint filed on July 12, 2021.  Where a new defendant is added in an amended complaint, the limitations period for the new defendant only relates back to the original complaint where the new defendant's omission from the original complaint was based on an "excusable mistake by the plaintiff as to the identity of the proper parties." *Lilley v. Greene Cent. Sch. Dist.*, 134 N.Y.S.3d 503, 511 (3d Dep't 2020).  Fonseca was well aware of EZ AG and there can be no excusable mistake here.  Any claims against EZ AG that accrued more than 10 years before the filing of the Complaint on July 12, 2021 are also untimely and must be dismissed.

### III. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE DUE TO INCURABLE DEFECTS

The Court should dismiss the Complaint *with* prejudice.  Courts deny leave to amend where, as here, the plaintiff would not be able to cure the defective pleading, *Mackensworth v. S.S. Amer. Merchant*, 28 F.3d 246, 251 (2d Cir. 1994), or where leave to amend is "unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

The Complaint has already been amended once.  If there were any legal basis for his suit, with the benefit of his innumerable secret recordings, Fonseca would have been able to state it in his initial complaint.  Fonseca filed his first complaint in 2017, more than four years after EZ

USA terminated his employment.  The key allegations made in the Complaint were examined by the IRS—the appropriate authority to review and pursue federal tax claims—and the IRS made no adjustments to EZ USA's tax returns based on Fonseca's claims.  Am. Compl. ¶ 321. Although Fonseca has now had the benefit of more than four years of intensive investigation by the New York Attorney General (*see* Not. of Removal, Exh. 4) to bolster his case, the Complaint contains essentially the same inadequate allegations.  Fonseca has never plausibly alleged that Egon Zehnder committed any NYFCA violations.  Because there is no reason to believe that Fonseca possesses any new facts that could cure his pleading deficiencies, the Court should dismiss the Complaint with prejudice.

**<u>CONCLUSION</u>**

For the foregoing reasons, Fonseca's Complaint should be dismissed.

DATED: September 24, 2021

Respectfully Submitted,

<u>/s/ Andrew C. Hruska</u>
Andrew C. Hruska
Kyle P. Sheahen
Jeffrey S. Bucholtz*
Yelena Kotlarsky
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
ahruska@kslaw.com

*Attorneys for Defendants Egon Zehnder International, Inc. and Egon Zehnder International AG*

*\*Pro hac vice application forthcoming*