UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                        :
STATE OF NEW YORK *ex rel.* AMERICAN            :
ADVISORY SERVICES, LLC,                          :
                                                        :
                            Plaintiff,           :                21-cv-6883 (LJL)
                                                        :
            -v-                                         :                ORDER
                                                        :
EGON ZEHNDER INTERNATIONAL, INC., and      :
EGON ZEHNDER INTERNATIONAL AG,               :
                                                        :
                            Defendants.          :
-------------------------------------------------------------------X

```
┌────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____            │
│ DATE FILED:__7/14/2022__        │
└────────────────────────────────┘
```

LEWIS J. LIMAN, United States District Judge:

Proposed Intervenor-Plaintiff State of New York (the "State" or "Intervenor") has filed a motion to intervene, pursuant to Federal Rule of Civil Procedure 24, in order to propose a settlement of New York False Claims Act ("NYFCA") causes of action asserted by Plaintiff-Relator American Advisory Services LLC ("American Advisory" or "Relator") on the State's behalf. Dkt. No. 55. That motion is opposed by Plaintiff-Relator. *See* Dkt. No. 58. For the following reasons, the motion to intervene is granted, and the Court will not require the State to file a proposed pleading.

## BACKGROUND

Familiarity with the Court's Opinion denying Relator's motion to remand the action to state court is assumed. *See State ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, --- F. Supp. 3d ---, 2022 WL 855920 (S.D.N.Y. Mar. 22, 2022). In essence, Relator's amended complaint (the "Complaint") alleges a scheme by Defendants Egon Zehnder International, Inc. and Egon Zehnder International, AG (collectively, "Defendants") to file false tax returns with the State. The alleged scheme involved Defendants reporting outside of the United States income

1

that was earned in the United States and should have been reported as United States source income.  As a result, Relator claims that Defendants understated their "entire net income" as defined by state law, which is based on the entire taxable income that the taxpayer is required to report to the United States Treasury.

On August 16, 2021, Defendants removed the action from state court to federal court, Dkt. No. 1, and on March 22, 2022, the Court denied Relator's motion to remand the action back to state court, Dkt. No. 41.  On March 23, 2022, the Court issued an order noting that Defendants had moved to dismiss the Complaint and that the Complaint raised transfer-pricing issues and "questions of importance to the administration of the federal and state tax systems that potentially transcend[ed] the interests of the parties to the lawsuit."  Dkt. No. 42.  The Court invited the views of the New York State Department of Taxation and Finance or the New York State Attorney General and the United States Treasury or the United States Department of Justice.  *Id.*

By letter of June 15, 2022, the State informed the Court that it had reached an agreement in principle with Defendants to settle the NYFCA causes of action that comprised Relator's *qui tam* action and that it intended to file a motion to intervene in order to settle the claims asserted by Relator in the State's name and on the State's behalf.  Dkt. No. 53.  The State asked the Court to postpone the deadline for the filing of amicus briefs until after the Court ruled on the State's upcoming motion seeking a determination that the settlement is fair, adequate, and reasonable. *Id.*  The Court granted that application.  Dkt. No. 54.

On June 17, 2022, the State filed this motion to intervene.  Dkt. No. 55.  On June 28, 2022, Relator filed a memorandum of law in opposition to the motion to intervene.  Dkt. No. 58.

On July 5, 2022, the State filed a reply memorandum of law in further support of its motion to intervene.  Dkt. No. 59.

The State argues that it is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) because (i) the State is the real party in interest regarding the allegedly underpaid taxes that are the subject of the action; (ii) without intervention, the action may impair the State's ability to protect its interests, which the New York Attorney General has determined are best served by the settlement of the action; (iii) the private Relator here opposes the State's settlement and therefore cannot adequately represent the State's interests; and (iv) the State's motion is timely.  Dkt. No. 56 at 4.  The State argues, in the alternative, that it is entitled to permissive intervention under Federal Rule of Civil Procedure 24(b) because the State's motion is timely; the original parties are not unduly prejudiced; the State, as the real party in interest, possesses (and is settling) the exact same claims against Defendants under the NYFCA that Relator is pursuing in this action; and Relator's claims arise under the NYFCA, which is a statute administered by the New York Attorney General on the State's behalf.  *Id.*  Finally, in the event that the Court grants its motion to intervene, the State asks to be excused from filing a proposed pleading because its motion papers provide adequate notice of the basis for the State's intervention and because the State's claims are already set forth in Relator's Complaint.

Relator opposes the motion to intervene.  Dkt. No. 58.  It argues that the State's motion to intervene should be judged based upon the "good cause" standard set forth in the NYFCA and the federal False Claims Act, upon which the NYFCA is modeled.  *Id.* at 3.[1]  Relator contends

---

[1] The New York False Claims Act provides: "If neither the attorney general nor a local government intervenes in the *qui tam* action then the *qui tam* plaintiff shall have the responsibility for prosecuting the action, subject to the attorney general's right to intervene at a later date *upon a showing of good cause*."  N.Y. Fin. L. § 190(5)(a) (emphasis added).  The federal False Claims Act provides:  "If the Government elects not to proceed with the action, the

that the State has not shown good cause to intervene and that it "must show what changed to make it want to intervene, when it previously declined and permitted the whistleblower to proceed with the claims." *Id.* at 4.[2]  Relator argues that neither the State's sovereign interests in the prosecution and settlement of a claim that belongs to it, nor the fact that Relator opposes the settlement, satisfy that standard, particularly where attempts to settle the case occurred six weeks before the State concluded that Relator could not represent its interests. *Id.* at 6–7.

## DISCUSSION

The State argues that it is entitled to intervene under either Federal Rule of Civil Procedure 24(a)(2)—governing mandatory intervention—or Federal Rule of Civil Procedure 24(b)—governing permissive intervention.  Federal Rule of Civil Procedure 24(a)(2) requires the court "on timely motion" to "permit anyone to intervene who . . .  claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest."  Fed. R. Civ. P. 24(a)(2); *see also* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908 (3d ed.) ("On timely motion an absentee must be permitted to intervene if (1) the absentee claims an interest relating to the property or transaction that is the subject of the action, and (2) is so situated that the disposition of the action

---

person who initiated the action shall have the right to conduct the action.  If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense).  When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date *upon a showing of good cause.*" 31 U.S.C. § 3730(c)(3) (emphasis added).

[2] On November 13, 2020, after a lengthy investigation, the State notified the New York state court that it had decided neither to supersede and convert Relator's action—which had been filed in state court on January 31, 2017—into a civil enforcement action nor to intervene, although it expressly "reserve[d] its right to intervene in this action, for good cause."  Dkt. No. 57-1 at 2 (citing N.Y. Fin. L. § 190(5)(a)).

4

may as a practical matter impair or impede the absentee's ability to protect that interest, unless (3) the existing parties adequately represent that interest."). "Rule 24(a)(2) promises intervention to those who bear an interest that may be practically impaired or impeded 'unless existing parties adequately represent that interest.'" *Berger v. North Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, slip op. at 13 (2022) (quoting Fed. R. Civ. P. 24(a)(2)). The Rule's test presents proposed intervenors "with only a minimal challenge," *id.*, and "[n]ormally, a State's chosen representatives should be greeted in federal court with respect," *id.* at 15. Under Rule 24(a)(2), an interest supports intervention if it is "direct, substantial, and legally protectable." *U.S. v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001). As to the timeliness of a motion, the "most important circumstance relating to timeliness is that the [State] sought to intervene 'as soon as it became clear' that [the State's] interests 'would no longer be protected' by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S.Ct. 1002, 1012 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

The interest requirement of Rule 24(a)(2) is met "if the judgment will have a binding effect on the would-be intervenor." Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1908.1 (3d ed.) The State not only has a direct, substantial, and legally protectable interest in this action, but it is the real party in interest in this action. *See U.S. ex rel. Mohajer v. Omnicare, Inc.*, 525 F. Supp. 3d 447, 452 (S.D.N.Y. 2021) ("[T]he relator . . . 'invokes the standing of the government resulting from the fraud injury' and 'stands in the shoes of the government, which is the real party in interest.'" (quoting *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993))). "[A]lthough *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains the real party in interest in any such action." *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir.

1990) (citing Evan Caminker, *The Constitutionality of* Qui Tam *Actions*, 99 Yale L.J. 341, 350–54 (1994)).  As such, the State can and does claim an interest relating to the property or transaction that is the subject of the action.

According to the State, its interests are best served by its proposed settlement with the Defendants.  The State articulates an interest both in resolving this action at this stage and in it being resolved on the basis of the terms of settlement it has reached with Defendants.[3]  Dkt. No. 56 at 10.  Both of the State's interests threaten to be impaired by the continued litigation of the action by Relator against Defendants.  *Id.*  "Integral to the *qui tam* enforcement scheme . . . is the option retained by the [State] to act on its own behalf by intervening in or conducting an action brought by a private person."  *Minotti*, 895 F.2d at 104.  The State has determined that its interests will be served by the settlement it has reached with the Defendants.  Dkt. No. 56 at 10. By indicating that it will object to the settlement, Relator has made clear that it no longer adequately represents the State's interests, since Relator is opposed to the same settlement that the State believes would best represent its interests—the interests of the real party in interest. *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 (1972) (noting that "[t]he requirement of [Rule 24] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." (citing 3B J. Moore, Federal Practice 24.09—1 (4) (1969))).  Finally, the State's motion for intervention was timely, given that it was filed as soon as the State reached an agreement with Defendants to settle the NYFCA causes of action and learned that Relator intended to object to the proposed settlement.  Without prejudging the fairness or reasonableness of the proposed

---

[3] In particular, the State is concerned that "absent intervention the State may lack appellate rights and may not be able to fully defend its settlement in the event of any appeal."  Dkt. No. 56 at 10.

settlement, the State has established its right to intervene under Rule 24(a)(2) in order to present the settlement to the Court and—if the Court accepts it—to compromise this action.

Federal Rule of Civil Procedure 24(b)(1)(B) allows permissive intervention on timely motion to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As articulated by the Second Circuit, "[w]hen considering a motion to intervene by permission under Rule 24(b), Fed. R. Civ. P., a court considers substantially the same factors as for an intervention as of right." *Harris-Clemons v. Charly Trademarks Ltd.*, 751 Fed. App'x 83, 85 (2d Cir. 2018) (summary order) (internal quotation omitted) (citing *"R" Best Produce, Inc. v. Shulman-Robin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "To be granted intervention as of right *or by permission*, 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis added) (quoting *"R" Best Produce, Inc.*, 467 F.3d at 240). "Failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Id.* Thus, the above-listed factors act as a threshold determination for a court considering an application for permissive intervention. Here, the State—as the real party in interest in a *qui tam* action—has a claim that shares with the main action a common question of law or fact. The State also complies with the required factors, as demonstrated by the Court's grant of intervention as of right. Therefore, the Court would also grant the State's motion to intervene by permissive intervenor under Federal Rule of Civil Procedure 24(b)(1)(B).[4]

---

[4] Because the State fulfills the necessary requirements for permissive intervention under Rule 24(b)(1)(B), there is no need for the Court to address possible permissive intervention under Rule 24(b)(2). *See* Fed. R. Civ. P. 24(b)(2).

Relator argues that the proper standard to be applied to the State's motion to intervene in this federal action is not found in Rule 24 but in the NYFCA's "good cause" requirement. But as a general matter, New York State law cannot . . . dictate procedure in federal district court." *U.S. v. N. Metro. Found. for Healthcare, Inc.*, 2021 WL 8016912, at *1 (E.D.N.Y. July 28, 2021). Indeed, it is well settled that, in federal court, a Federal Rule of Civil Procedure controls if it "answers the question in dispute" "unless [the Rule] exceeds statutory authorization or Congress's rulemaking power." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins, Co.*, 559 U.S. 393, 398 (2010); *see also La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) ("The test is whether a Federal Rule of Civil Procedure answers the same question . . . . If so, the Federal Rule governs, unless it violates the Rules Enabling Act." (internal quotation marks and citations omitted) (alteration adopted)). That is, if a rule regulates procedure—rendering it proper under the Rules Enabling Act[5]— and covers the disputed issue, it will supplant a state law that answers the same question. *Hanna v. Plumer*, 380 U.S. 460, 464, 470 (1965).

It is not disputed that Rule 24 and the provision of the NYFCA cited by Relator answer the same question—whether the State may intervene in this action. The question is thus whether Rule 24 is procedural in nature and thereby complies with the Rules Enabling Act. While Relator argues that the NYFCA's "good-cause" requirement is "not a purely procedural matter" but is rather "a substantive protection" that ensures individuals are properly incentivized to proceed with *qui tam* actions, Dkt. No. 58 at 4, Relator's argument misunderstands the relevant inquiry. "[I]t is not the substantive or procedural nature or purpose of the affected state law that

---

[5] The Rules Enabling Act provides, in relevant part, that "[t]he Supreme Court shall have the power to prescribe general rules of practice and procedure . . . for cases in the United States district courts," 28 U.S.C. § 2072(a), but cautions that "[s]uch rules shall not abridge, enlarge or modify any substantive right," *id.* § 2072(b).

matters, but the substantive or procedural nature of the Federal Rule." *Shady Grove*, 559 U.S. at 410.  If the rule regulates procedure, "it is authorized by [the Rules Enabling Act] and is valid in all jurisdictions, with respect to all claims, *regardless of its incidental effect upon state-created rights*." *Id.* (emphasis added).  And indeed, it is well settled that the right to intervene in an action pending in federal court is "procedural" such that Rule 24 complies with the Rules Enabling Act and should apply.  *See* Wright & Miller, &C Fed. Prac. & Proc. § 1905 (3d ed.) ("It is wholly clear that the right to intervene in a civil action pending in a United States District Court is governed by Rule 24 and not by state law."); *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2018) ("The right to intervene is a purely procedural right."); *see also Metalizing Tech. Servs., LLC v. Berkshire Hathaway Specialty Ins. Co.*, 2022 WL 1121754, at *3 (S.D. Fl. April 14, 2022) (citing cases) ("Although [Relator] brought this action in state court, the case is now in federal court.  In federal court, Rule 24 governs when a party may intervene, even if state law would provide a different rule.").  Relator's argument that the NYFCA's intervention standards should apply fails in light of these established principles.

Nor does applying the standards of Rule 24 here frustrate the purposes of the intervention and substitution provisions of the NYFCA.  Read as a whole, the effect of the provision to the extent it addresses intervention (as opposed to substitution) is to encourage the State to intervene early in the prosecution of a NYFCA matter and to ensure the orderly processing of such cases by the courts.  It is not to give the Relator a vested interest in the prosecution of or recovery from a NYFCA action.  The statute provides that "[t]he state may elect to supersede or intervene and proceed with the action . . . within sixty days after it receives both the complaint and the material evidence and information."  N.Y. Fin. L. § 190(2)(b).  But the State's decision not to intervene in that sixty-day period does not give the person who initiated the action the unfettered right either

to prosecute the action or to obtain a certain amount of a *qui tam* recovery.  Nor does the State's decision to intervene divest the initiating person of the right to prosecute the action.  Even if the State does not intervene, the State may obtain a stay of the *qui tam* action and prevent the initiator from conducting discovery for up to sixty days if discovery "would interfere with the state's or a local government's investigation or prosecution of a criminal or civil matter arising out of the same facts" and may extend that stay if discovery would "interfere with the ongoing criminal or civil investigation or proceedings."  *Id.* § 190(5)(d).  The State may still "elect to pursue any remedy available with respect to the criminal or civil prosecution of the presentation of false claims," regardless of its impact on the *qui tam* action.  *Id.* § 190(5)(c).

As noted, the initiating person's responsibility to prosecute the action is subject to the right of the State—at *any* time after the sixty days—to intervene "upon a showing of good cause."[6]  *Id.* § 190(5)(a).  If the State elects to intervene, it does not assume prosecution of the action—it must "share" that responsibility with the initiating party.  *Id.*  The State does not have the unfettered right to move to dismiss the action; if the initiating party objects, he must be given an opportunity to be heard.  *Id.* § 190(5)(b)(i).  The State also does not have the unfettered right to settle the action even if it has intervened.  It must make a showing "that the proposed settlement is fair, adequate, and reasonable with respect to *all parties* under all of the circumstances."  *Id.* § 190(b)(ii) (emphasis added).  Only if the State shows that the "original plaintiff's unrestricted participation during the course of the litigation would interfere with or unduly delay the prosecution of the case, or would be repetitious or irrelevant," can the State ask a court "to impose limitations on the original plaintiff's participation in the case."  *Id.*

---

[6] Tellingly, the statute refers only to the right to intervene and not to the right to supersede after the sixty-day period.

§ 190(b)(iii).[7]  Significantly, the statute provides overlapping ranges of recovery for the initiating party that permit a court to award the same amount to the that party regardless whether the State has intervened.  If the State has intervened (or converted the *qui tam* action into an attorney general enforcement action), the person who initiated the action "shall be entitled to receive between fifteen and twenty-five percent of the proceeds recovered in the action or in settlement of the action."  *Id.* § 190(6)(a).  If the State does not elect to intervene or to convert the *qui tam* action into an enforcement action, then the initiating party shall be entitled "to receive between twenty-five and thirty percent of the proceeds recovered in the action or settlement of the action."  *Id.* § 190(6)(b).

To the extent that the NYFCA provisions were intended to protect whistleblowers against the risk "that their investment of resources can be swept away without an articulated, justifiable reason" and thereby to incent them "to help the government fight fraud," Dkt. No. 58 at 5, the application of Rule 24 to the NYFCA does not undermine that objective.  After intervening, the State cannot prosecute the action alone without the initiating person's involvement—the State would have to show that the initiator's involvement would unduly interfere with or unduly delay the prosecution of the case.  The State cannot unilaterally dismiss the NYFCA action regardless of whether it has intervened; the initiating person must still be given an opportunity to be heard on the issue of dismissal.  The State also cannot settle the matter without considering the initiating person's interests and whether the settlement is "fair, adequate, and reasonable" with respect to that person and all other parties.  *Id.* § 190(6)(a).  And the State's involvement itself does not necessarily divest the initiating person of the recovery to

---

[7] An original plaintiff's participation may also be restricted "upon a showing by the defendant that the original qui tam plaintiff's unrestricted participation during the course of the litigation would be for purposes of harassment or would cause the defendant undue burden."  *Id.*

which he would have been entitled if the State had not intervened: the court can still award the initiating person twenty-five percent of the recovery if he convinces the court that his participation and the circumstances justify it.  Indeed, to the extent that the size of the settlement or the amount of the recovery is a function of the involvement of the State—and the resources it brings to the action—even a recovery of less than twenty-five percent of what will be a larger recovery upon a lesser expenditure of resources by the whistleblower might end up being a windfall to that person.[8]

Finally, the State asks the Court to excuse it from refiling an amended pleading given that its motion papers provide adequate notice of the basis for the State's intervention—the proposed settlement with Defendants—and the State's claims are already set out in Relator's Complaint.  Dkt. No. 56 at 15–16.  Federal Rule of Civil Procedure 24(c) states that a motion to intervene "must state the grounds for intervention *and* be accompanied by a pleading that sets out the claim

---

[8] Even if the Court were to accept the Relator's claim that the State's motion to intervene should be evaluated under the NYFCA, it does not follow that the Court's conclusion would differ. "The NYFCA, N.Y. State Fin. Law § 191, 'follows the federal False Claims Act,' and thus New York courts 'look toward federal law when interpreting the New York act.'"  *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 768 n.4 (S.D.N.Y. 2021) (quoting *Dhaliwal v. Salix Pharms, Ltd.*, 752 Fed, App'x 99, 100 (2d Cir. 2019) (summary order)).  Federal courts have routinely held that a government has "good cause" to intervene where, as here, it is intervening to settle a federal False Claims Act action brought on its behalf.  *See, e.g.*, *Balko*, 2017 WL 11037320, at *2 (concluding "that the Government demonstrated good cause to intervene in this action" where Government reached a proposed settlement with the defendant); *U.S. v. Everglades Coll., Inc.*, 2015 WL 11004887, at *3 (S.D. Fla. Apr. 1, 2015) (allowing the Government to intervene late in a Fair Claims Act case to ensure a proper resolution of the action); *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 689, 694–95 (W.D. Tex. Mar. 28, 2007) (permitting the Government to intervene for settlement negotiations).  The Court need not reach the question whether this approach would permit intervention to settle in every case brought by a relator and without consideration of the particular facts of that case.  In this case, something has changed from when the State chose not to intervene and the present motion—the Court issued an order in which it identified in the case and asked for briefs to address a question of importance to the administration of the state tax systems that potentially transcended the interests of the parties to the lawsuit.  Dkt. No. 42.

or defense for which intervention is sought." Fed. R. Civ. P. 24 (emphasis added). Where filed papers "provide[] adequate notice . . . as to the grounds for the motion to intervene . . . , the failure to comply with the technical requirements of Rule 24(c) does not bar consideration of the motion on the merits." *S.E.C. v. Downe*, 1993 WL 22126, at *14 n.8 (S.D.N.Y. Jan. 26, 1993); *see also Belgian Am. Mercantile Corp. v. De Groeve-Marcotte & Fils*, 433 F. Supp. 1098, 1101 (S.D.N.Y. 1977) (explaining that "[t]he Second Circuit has held that in the face of strong circumstances the formal requirements of Rule 24 need not be insisted on" and excusing noncompliance where the "papers filed by [the intervenor] fulfill[ed] the substance of Rule 24's requirements" (citing *Kupferman v. Consol. Research &Mfg. Corp.*, 459 F.2d 1072, 1074 n.1 (2d Cir. 1972))). The Court agrees with the State that requiring the State to refile an amended pleading would not serve any purpose, and the Court excuses the State from doing so.

## CONCLUSION

The motion to intervene is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 55.

SO ORDERED.

Dated: July 14, 2022
          New York, New York
                                          _____
                                                    LEWIS J. LIMAN
                                            United States District Judge